PATRICK J. CONLON AND RICHARD POOLE v. THEODORE A. McGRAW.

*Landlord and tenant—Eviction by lessor—Pleading—Mis-statement of date of alleged injury—Damages—Sub-letting premises for unexpired term—Statute of frauds.*

1. Plaintiffs were sub-lessees of a store owned by defendant, on one side of which was a smaller store, and on the other a stairway leading from the street into the *second* story of the building, which covered *both* stores. Defendant removed the doors and windows of the *smaller* store, and the brick front of the *second* story, and the door leading thereto, on the second day of March, he being at the time in the possession of these portions of the building. On March 3 plaintiffs brought suit for the injury to their leasehold interest, and in their declaration counted upon the acts complained of as committed on March 1, by means of which their leasehold interest was destroyed.

   *Held,* that it was competent to prove the commission of the acts complained of on March 2 under the declaration.

   *Held,* further, that the acts of defendant were equivalent to an eviction of plaintiffs, and that the wrong done must be considered as a permanent and single one, warranting a recovery by plaintiffs of their loss of profits to the end of the term of their lease as the *full* measure of their damages.

2. In such a case it is error to allow plaintiffs to recover for the value of improvements made during their tenancy, such as papering, painting, and fixing the partitions and doors, there being no claim that any act of the defendant had any tendency to destroy or impair such improvements, of which they had the full

use to the end of their term, and which they could not have removed or recovered the value of if the building had not been disturbed.

3. A lessee *verbally* sublet the leased premises for the unexpired term of his lease, which he informed *his* lessees expired at a given date and within one year. He afterwards found the lease, which was lost at the time, and which proved to run for more than one year from the date of such subletting.

*Held*, that the contract must be understood and construed in the light of the circumstances attending its making, it being plain that the sub-lessees intended to lease the premises for the term ending at the date stated by the lessee.

4. Under a declaration charging that the defendant caused to be broken and torn down the *front* brick wall over certain store rooms, and otherwise demolished the said premises, testimony is admissible to show damage done to the rear part of the building.

Error to superior court of Detroit. (Chipman, J.) Argued April 13, 1887. Decided June 9, 1887.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Walker & Walker*, for appellant.

*Julian G. Dickinson*, for plaintiffs.

MORSE, J. The plaintiffs, in an action of trespass on the case, claim damages for an injury to their leasehold interest in a certain brick building owned by defendant. This building was two stories in height, and fronting on Woodward avenue. It was about 30 feet in width, and divided below into two stores,—the larger one being in the center, leaving the smaller one on one side, and on the other side a stairway leading from the street into the second story of the building.

Prior to October 1, 1885, the entire lower floor was occupied by a tenant, one Wilde, who held a written lease of the same from defendant, which lease extended to April 1, 1887.

In December, 1885, the plaintiffs obtained of said Wilde a verbal lease of the larger store, at the rate of $16 per month. At the time they so leased the premises, Wilde could not

find his lease from defendant; but told plaintiffs, as they testify, that it expired July 1, 1886. They took possession under the lease, and paid the rent for December to Wilde. In the latter part of that month, December, 1885, Wilde assigned his lease to defendant, who received the rent from the plaintiffs for January and February.

March 2, 1886, a builder, Helson, and men in his employ, under instructions from the defendant, removed the doors and windows of the smaller store, the door leading to the second story, and the brick front of the second story. It is also claimed by plaintiffs that they took off the doors and pulled out a portion of the back part of the building.

The plaintiffs commenced this suit on the next day, and filed their declaration therein on the fourteenth day of May, 1886. They allege that they were carrying on the business of selling at retail cigars, tobacco, wines, beer, and liquors, and furnishing lunches and refreshments, and that, by reason of this injury to the premises, their store was rendered unfit for said business, and of little or no use or value to them, by which they have lost great gains and profits which had been accustomed to arise and accrue to them before such damage and injury to the building. They recovered a judgment in their favor in the superior court for the city of Detroit in the sum of $480.

The defendant alleges error in the proceedings, and his counsel insist that under the law of the case, and the evidence as adduced on the trial, the court below should have directed a verdict for the defendant—

1. For the reason that no cause of action had accrued to the plaintiffs at the time laid in the declaration. The declaration counts upon acts committed March 1, 1886, when it is admitted by all the parties that nothing was done to the building by defendant until March 2.

2. There was no evidence tending to show that the plaintiffs suffered any loss of profits on March 2, and the plaintiffs are not entitled to recover for any damages accruing after this suit was commenced.

3. By the plaintiffs' own showing they verbally agree to take the unexpired lease of Wilde for its whole term, and, that term being for over a year, such agreement was void, and the lease was legally only one from month to month, and a verbal notice, admitted to have been given by defendant to them to quit possession on March 1, rendered their possession after that date illegal.

The *first* reason is not a good one. Although the declaration counted upon the injury to the building as of March 1, it was competent to show under the same that it was done on March 2 instead of March 1.

*Second.* The plaintiffs could not tell whether they lost anything in their business on the second day of March or not. Therefore it is to be determined whether they are entitled to recover in this action for loss of profits resulting from the injury to the building after the beginning of suit. The plaintiffs were not ousted from the building by the act of the defendant. They remained and carried on their business therein until evicted, in an action brought by defendant, sometime in July, 1886. But they claim that the building was in such shape that many people who had been in the habit of coming there stopped dealing with them, and their business fell off in receipts and profits in consequence thereof. The defendant's counsel argue that the wrong complained of is not the abuse of plaintiffs' property, but a misuse of the defendant's property, which, if a wrong to them, is not a trespass, but a continuing nuisance maintained by him upon his own premises. The defendant did not touch their leasehold, but, by removing portions of his own building, not rented by them, damaged their possession and business. It is claimed, therefore, that the gist of the action is for damages occasioned by a continuing nuisance maintained by the defendant on his own premises.

The record shows that, soon after the commencement of this suit, the defendant boarded up the portions of the building removed, so as to shield the plaintiffs from the weather,

and lessen their inconvenience and damage. It is claimed that all cases of this kind are to be considered as though actually tried and decided on the day they were commenced; consequently no damages can be recovered, accruing from the injury, after commencement of suit, as it cannot be proved, nor will the law assume, that the wrong will continue.

It is also claimed, and it appears, that there was no actual eviction of the tenants. Nothing was done to any part of the premises held by them. But the acts of the defendant upon his own property, incidentally but necessarily, were a damage and an injury to the property and the business of the plaintiffs.

It is claimed that the declaration does not count upon an eviction or ouster from the tenancy, or the destruction of the leasehold. We think the last count substantially avers a destruction of the leasehold; and, although the plaintiffs saw fit to remain in the building instead of vacating the same, the testimony tends to show that there was no profit in their business after the removal of this front, and therefore no value in their holding. The defendant undoubtedly had a legal right to make any change or alteration he saw fit in his portion of the building which did not tend to impair or destroy the value of plaintiffs' leasehold; but he had no right to injure them in the possession or enjoyment of their property. If he did, it was a wrong for which they must have a remedy and a right of action. And it seems to me that it must be considered as a permanent wrong and a single one. The act of the defendant was equivalent to an eviction, and such was the manifest intention of it. The plaintiffs were obstructed in the beneficial use of the whole property held by them. The case is substantially covered by previous decisions of this Court. *Chandler v. Allison.* 10 Mich. 460; *Shaw v. Hoffman*, 21 Id. 151; *Allison v. Chandler*, 11 Id. 543; *Baumier v. Antiau*, 65 Id. 31.

The removal of this front was an act which, from its

nature, necessarily would continue its injury to the business of the plaintiffs, independent of any subsequent wrongful act on the part of the defendant. And here is found the distinction between the case at bar and the numerous authorities cited by defendant's counsel. The cases cited in support of the position that the wrong was a continuous one, and damages arising after the commencement of suit could not be recovered, are all those where the wrong must be continued each day by the action of the wrong-doer; such as the continuance of a dam or an offensive tannery, or the diverting of water, or the flooding of land, or the maintenance of nuisances, and things of a like nature. The wrong in this case was the destruction of the front and other parts of defendant's property, causing injury to the plaintiffs. He was not bound to abate the wrong or repair the injury. The act was one which, without the interposition of human labor, would leave the building permanently injured, and it required no further action upon the part of the defendant to keep it so. On the contrary, he or some one else must do some act to prevent its permanency by replacing the portions of the building torn away.

As a general rule, a new action cannot be brought without a new unlawful act and fresh damage. In cases of nuisance, every continuance of the nuisance is a new injury. These are mainly the cases relied upon by the defendant to support his claim. But the case at bar cannot be treated as a nuisance which is abatable. It is an act on the part of the defendant upon his own property which he would have a perfect -right to do, provided it did not injure the plaintiffs. The act did injure them, and the consequences of it continued without any further action or motion of defendant. Plaintiffs' leasehold was damaged to its full extent when the act was done, and it was not necessary for the defendant to move again to keep such damage in continuance, as far as the profits of plaintiffs' business were concerned, from day to day to the

end of their term. The only recourse of the plaintiffs was an action at law to recover their damages, and the court did not err in permitting them to show their loss by the injury up to the end of their tenancy; and they were entitled to recover such loss for the same time. See 3 Suth. Dam. 403–414, and cases cited.

*Third.* It must be considered that the plaintiffs leased these premises only to the first of July, 1886. That was the time they understood the lease to end, and their verbal bargain was made for such time, and was a valid one for that period. The fact that the lease, which Wilde could not find at the time the bargain was made, ran for a longer time than he represented to them, and the agreement in terms was to take the unexpired term of such lease, can make no difference in the rights of the parties. When they talked about the unexpired term, and made their agreement, they were contracting with reference to such term ending in July, 1886. The contract must be understood and construed in the light of the circumstances attending and surrounding it; and it is plain enough that the intention was to purchase a lease which ended in July, 1886; or, in other words, to sublease the premises for that period.

The plaintiffs claimed upon the trial that they had made certain improvements, inside of the store occupied by them, during their tenancy, and before the injury complained of; such as painting, papering, and fixing the partitions and doors. The circuit judge instructed the jury that, if these improvements were destroyed, they would be entitled to the value of them. As they were permitted to recover the entire damage to their business, this portion of the charge of the court was erroneous. There was no pretense in the proofs that any act of the defendant or his agents had any tendency to destroy or impair these improvements. They had the full use of them to the end of the term; and, if the building had not been disturbed, they could neither have taken these

improvements away nor chargèd the defendant for the value of them. When they were allowed to recover the full loss of profits to the end of their term' in their business, they received full compensation for all the damage they had suffered on account of the defendant's unlawful act; and to give them the value of these improvements was to compensate them for something they had not lost. Nor does the declaration count upon any such damage.

We think the allegation in the last count, that defendant "unjustly caused to be broken and torn down the said front brick wall over said rooms, and. *otherwise demolish the said premises*," sufficient to authorize the admission of testimony showing damage done to the rear part of the building.

We find no errors in the trial of the case, or in the submission of the same by the court to the jury, except the one above noted as to the recovery for the value of the improvements. For this error the judgment must be reversed, and a new trial granted, with costs of this Court to defendant.

CAMPBELL, C. J., and CHAMPLIN, J., concurred.

SHERWOOD, J. I concur in the result.