Argued 24 April; decided 12 May, 1900.

### SALZGEBER *v.* MICKEL.

[ 60 Pac. 1009.]

LANDLORD AND TENANT—PLEADING EVICTION.

1.   A complaint in an action by a tenant against his landlord for being wrongfully evicted from rented lands, which states that under the lease the landlord had a right to terminate the occupation on notice whenever he desired to use the lands for some purpose other than that for which they had been rented; that the landlord gave such notice, and that the tenant peaceably surrendered possession in consequence thereof; that the said notice was given in bad faith and for the purpose of evicting plaintiff, and that the landlord had continued to use the lands for the same purpose for which they had been rented, states a cause of action for wrongful eviction as against a motion for judgment on the pleadings at the trial.

EVICTION—DAMAGES RECOVERABLE UNDER GENERAL ALLEGATION.

2.   Where an action is brought by a tenant against his former landlord for an eviction, based on the wrongful action and bad faith of the landlord, the natural and approximate damages resulting from the breach of the lease may be shown under an allegation of general damages.

BREACH OF CONTRACT—DAMAGES—WHEN ACTION MAY BE BROUGHT.

3.   Where the breach of a lease is total, an action for both present and prospective damages may be maintained without waiting the expiration of the time required for the full performance of the contract.

From Marion : GEO. H. BURNETT, Judge.

This is an action by John Salzgeber against N. Mickel and wife for damages for the wrongful eviction of plaintiff from certain leased premises to be used for the production of hops. The defendants, by a written agreement executed March 31, 1896, leased to plaintiff a hop field, situated upon their farm, for the term of five years, ending December 1, 1900. The agreement contains the following stipulation : " First party is entitled to desist in farming the said hop field as a hop field, but if N. Mickel and wife, party of the first part, wishes to desist, are obliged to give notice to John Salzgeber, party of the second part, from the last day of picking till ten (10) days after the last day of picking each year, but are not allowed to rent said hop field as a hop field to any other party or parties, nor farm it himself as a hop field, during the above-specified years." The action is based upon a breach of this stipulation, the averments touching which are substantially as follows : That on or about the first day of October, 1896, the defendants notified plaintiff, as by the terms of said agreement required, that they desired to desist and discontinue farming the premises as a hop field, and demanded and required plaintiff to quit and surrender up to them the said premises, and at the same time further notified the plaintiff that they thereby terminated said agreement and lease in pursuance of said stipulation ; that plaintiff, relying upon and believing said notice to have been given in good faith, and believing that defendants desired to desist and discontinue farming said premises as a hop field, as represented by them in said notice, and as they had a right to do under the terms of the agreement, surrendered to the defendants, who then and there took, and ever since have retained, possession of the said premises, although plaintiff duly

demanded a return thereof to him immediately upon discovering that they did not intend to discontinue farming the same as a hop field ; that said notice so given plaintiff by defendants was not given in good faith or with an honest intent ; that said defendants did not intend to desist, and have not desisted or discontinued, farming said premises as a hop field, but simulated said purpose only, and gave said notice for the sole purpose of evicting and ousting the plaintiff, and repossessing themselves of said premises four years before the lease thereof to plaintiff would otherwise terminate. The issues having been made up, a jury was impaneled, and, when plaintiff endeavored to offer proof showing the breach of the contract in the particular alleged, the court refused to admit it, and gave judgment for defendants upon the pleadings, upon the ground that the complaint does not state facts sufficient to constitute a cause of action. From this judgment the plaintiff appeals.                    Reversed.

For appellant there was a brief over the names of *Arthur C. Emmons, John A. Carson,* and *Adolf Schutz,* with an oral argument by *Mr. Emmons.*

For respondents there was a brief over the name of *Holmes & Kellogg,* with an oral argument by *Mr. William H. Holmes.*

Mr. Chief Justice Wolverton, after stating the facts, delivered the opinion of the court.

1.   The stipulation contains sufficient of the substance of the agreement, without further reference thereto, to indicate the purpose of the parties, viz., that, if the premises leased were to be utilized continuously for the production of hops, plaintiff should have the use thereof until the end of his term. But it was left optional with the

lessors whether the premises should continue to be used
for that specific purpose ; so a method was provided for
terminating the lease, and for their re-entering or regain-
ing possession in case they concluded that the hop culture
should cease thereon.    So long, however, as the premises
were to be used for the culture of hops, the lessors were
without authority to put an end to the lease, or to dispos-
sess the plaintiff, who, under such condition, was entitled
to possession and use until the end of his term.    Now,
the effect of the allegations of the complaint is that the
defendants wrongfully represented to plaintiff that they
desired to discontinue the use of the premises for the cul-
ture of hops, when, in truth and in fact, they intended to
continue using them for such purpose ;    that their avowed
desire to the contrary was not real, but simulated, and a
mere pretense, made with a view of regaining possession
of the premises and terminating the lease in violation of
the stipulation ;    that plaintiff, relying upon the supposed
good faith of defendants' representations, surrendered
possession in obedience to their notification ;    and that
defendants did not in fact discontinue the production of
hops, but have since utilized the premises for that pur-
pose.    There is here a statement of a breach of the con-
dition of the agreement upon the part of the defendants,
because they have evicted the plaintiff, contrary to the
letter, as well as the spirit, of the express stipulation.
If it be said that the breach is not well assigned, it must
be conceded that, at the worst, the complaint states a
good cause imperfectly ;    and, judgment having been
given upon the pleadings after the issues had been fully
formulated, all intendments must be taken in favor of
the sufficiency thereof.

2.    The question is therefore resolved into whether
damages may be predicated upon the breach assigned.    If
so, the complaint is sufficient.    The rule clearly applica-

ble here is stated by Mr. Sutherland as follows : ''Where
a lessor knows, or is chargeable with notice, of such de-
fect of his title that he cannot assure a lessee quiet enjoy-
ment for the term which he assumes to grant ; where he
refuses, in violation of his agreement, to give a lease, or
possession pursuant thereto, having the ability to fulfill,
as well as where he evicts his tenant,—he is chargeable
with full damages for compensation :'' 3 Sutherland,
Dam. (2 ed.) 1973, 1974. Mr. Chief Justice Earl, in
*Mack* v. *Patchin*, 42 N. Y. 167 (1 Am. Rep. 506), treats
the rule as an exception, or, rather, as not falling within
the general rule promulgated in such cases. The action
was for a breach of the covenant for quiet enjoyment im-
plied in a lease, where the eviction was occasioned through
fault of the lessor. He says : ''If the vendor is guilty
of fraud, or can convey, but will not, either from per-
verseness or to secure a better bargain, or if he has cove-
nanted to convey, when he knew he had no authority to
contract to convey, or where it is in his power to remedy
a defect in his title, and he refuses or neglects to do so,
or when he refuses to incur expenses which would enable
him to fulfill his contract,—in all these cases the vendor
or lessor is liable to the vendee or lessee for the loss of
the bargain, under rules analogous to those applied in
the sales of personal property.'' So it was held that, the
lessee having been evicted by reason of the prior mort-
gage covering the premises upon which the lease was
given, and the lessor having wrongfully given the lease,
knowing the mortgage was there, and failing to protect
the lease against the mortgage, the lessor was liable for
damages under the rule thus indicated by the learned
jurist. Other cases go further, and apply the rule that
indemnity constitutes the proper measure of damages,
whether a wrongful act or bad motives can be imputed to
the lessor or not : *Snodgrass* v. *Reynolds*, 79 Ala. 452 (58

Am. Rep. 601).   We need have but little concern, how-
ever, whether the rule is based upon the wrongful con-
duct and bad faith of the lessor, or not, as it is sufficient
for this case to know it exists, when bad faith attends
the transactions ;  for the defendants herein are charged
by the averments of the complaint with deceit and want
of good faith in procuring the surrender and relinquish-
ment of the leased premises by the plaintiff.   The dam-
ages recoverable are such as are natural and approximate,
and are ordinarily measured by the difference between
the rent paid and the actual value of the premises for the
unexpired term :  3 Sutherland, Dam. (2 ed.) 1974.   In
further support of these rules and principles, see *Alexander*
v. *Bishop*, 59 Iowa, 572 (13 N. W. 714); *Dodds* v. *Hakes*,
114 N. Y. 260 (21 N. E. 398);  *Townsend* v. *Nickerson
Wharf Co.* 117 Mass. 501 ;  *Rhodes* v. *Baird*, 16 Ohio St.
573 ;  *Greene* v. *Williams*, 45 Ill. 206 ;  *Dobbins* v. *Duquid*,
65 Ill. 464 ;  *Taylor* v. *Bradley*, 39 N. Y. 129 (100 Am. Dec.
415);  *Conlon* v. *McGraw*, 66 Mich. 194 (33 N. W. 388).
Plaintiff has alleged generally that he is damaged by rea-
son of the breach in the sum of $500.   Under this alle-
gation, he would be entitled to recover whatever sum he
might be able to show that he was damaged under the
rule.   There is a further allegation of $200 damages for
labor and money expended, etc.   Of this we must not be
understood to speak at the present time, because there
was no question presented respecting it.

3.   Again, it is contended that the action could not be
maintained until the full term of the lease had expired,
because the amount of damages is not otherwise ascer-
tainable.   But such is not the rule.   In case of a contract
extending through a considerable period of time, if the
breach is total, a recovery may be had of all damages,
both present and prospective, and it is not necessary to
await the time for full performance.   Actions may be

instituted and sustained at once upon the breach :   8 Am.
& Eng. Enc. Law (2 ed.), 682 ;   *Remelee* v. *Hall*, 31 Vt. 582
(76 Am. Dec. 140);   *Hale* v. *Trout*, 35 Cal. 229 ;   *American
Mfg. Co.* v. *Klarquist*, 47 Minn. 344 (50 N. W. 243);   *Tay-
lor* v. *Bradley*, 39 N. Y. 129 (100 Am. Dec. 415);   *Conlon*
v. *McGraw*, 66 Mich. 194 (33 N. W. 388).   The acts of the
defendants, as shown by the averments of the complaint,
amount to a total breach of their stipulation, as they have
put an end absolutely to the agreement under which the
parties were acting ;   and, under the authorities above
alluded to, the action was maintainable from the time
the breach occurred.   These considerations reverse the
judgment of the court below, and the cause will be re-
manded for such further proceedings as may seem proper
in the premises.                            REVERSED.

Decided 23 July, 1900.